[Crim. No. 1263. Third Appellate District.—June 15, 1933.]

THE PEOPLE, Respondent, v. ARTHUR OJEDA et al., Appellants.

George R. Anderson for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The appellants, Arthur and Manuel
Ojeda, were charged jointly with Elmer Harley with the
crime of grand theft committed by killing and appropriating
a hog belonging to George Scally. These three defendants
and Samuel Maynard participated in the commission of
the offense. Maynard shot the hog. The four individuals
dressed and divided the pork among themselves. The crime
was discovered and they were apprehended. Maynard
pleaded guilty to grand theft. Harley and the Ojeda
brothers were jointly tried and convicted. In pronouncing
judgment against them the court administered fines with
the alternative that if the fines were not paid they should
be imprisoned in the county jail until the penalty was
satisfied at the rate of one day for each two dollars of the
fine imposed. Harley failed to appeal from the judgment.
Arthur and Manuel Ojeda, however, perfected an appeal
therefrom.

The appellants contend the verdict and judgment are
not supported by the evidence, chiefly because the testi-
mony of Maynard, an accessory to the crime, was not ade-
quately corroborated by other evidence so as to conform to
the requirement of section 1111 of the Penal Code. It is
also asserted the court erred in refusing to give to the jury
certain instructions which were offered by the appellants.

We are satisfied the testimony regarding the details of the
crime which were related by Maynard, the accessory, is
sufficiently corroborated by other evidence to adequately
connect the appellants with the charge of grand theft so as
to fulfill the requirements of section 1111 of the Penal Code.
It is true that the crime of grand theft under the provisions
of section 487 of the Penal Code may be accomplished only
by participating in the actual taking and appropriating of
a live animal therein mentioned and not by the mere taking
of a dead carcass, having a value of $200 or less. (*People
v. Smith*, 112 Cal. 333, 339 [44 Pac. 663].) It follows
that if the evidence in the present case fails to connect the
appellants with the purpose of taking and appropriating
the hog while it was still alive, independently of the testi-
mony of the accomplice, then the requirements of section
1111 of the Penal Code have not been fulfilled and the evi-
dence of their guilt is insufficient to warrant their convic-

tion of the crime of grand theft. But corroborating evidence of their presence and association with Maynard, who shot the hog in the night-time, at the very time and place when and where it was killed, together with their assistance in skinning, dressing and dividing between themselves the carcass of the animal, is ample evidence to adequately connect them with the original intention formed while the hog was still alive of killing and appropriating it.

Substantial evidence was adduced, in addition to the testimony of their accomplice in the crime, of material circumstances tending to connect the defendants with the original purpose formed while the hog was still alive of killing and appropriating it. This is sufficient to warrant their conviction under the provisions of section 1111 of the Penal Code. (*People* v. *Negra,* 208 Cal. 64 [280 Pac. 354]; *People* v. *Davis,* 210 Cal. 540, 558 [293 Pac. 32, 40].) In the case last cited it is said, quoting from *People* v. *Negra, supra:* " 'The law does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative testimony is not necessary to support a judgment of conviction on the testimony of an accomplice. Even though circumstantial and slight, the evidence is, nevertheless, sufficient if it tends to connect the accused with the commission of the offense.' "

George Scally testified that he owned a ranch in Wooden Valley, Napa County, upon which he kept a band of sheep and some hogs; that the particular hog which is involved in this criminal proceeding was kept in a corral on the premises; that he was informed of the disappearance of the hog and in company with a deputy sheriff he discovered and identified its hide which, to conceal the crime, had been thrown in the well located on the property occupied by the accomplice Maynard.

Maynard made a complete confession of the entire transaction. He testified at the trial of these appellants that he met them at the Wooden Valley ranch the night of the theft and went with them to the corral accompanied by the defendant Elmer Harley, where they found the hog; that Manuel Ojeda chased the hog about the corral, trying to kill it with a hammer, but failed to accomplish his purpose; that a shotgun was then brought to him by one of the

parties, by means of which he shot and killed the hog; that the four men then hauled it to a shed on the premises where they all participated in skinning and dressing the carcass; that they took the meat to the house of Samuel Herrera, where they cooked and ate some pork chops; that they then divided the remainder of the meat among themselves and separated, the appellants taking a portion of the hog with them, and that the hide was then taken home and thrown in a well to conceal the crime. He testified regarding the presence and participation of the appellants in the commission of the offense, as follows: "Q. Who was with you, if anyone, at the time that hog was shot? A. Mr. Harley and the Ojeda boys, sir. . . . We was talking about the hog in the lot there. . . . When we saw the hog there, and we got to talking about killing it and there wasn't any gun to kill it with there, and a gun was brought there to kill it with. . . . Q. Some one of these three defendants handed you that gun? A. Yes sir. . . . In a way it was said (for me) to kill it." He further testified regarding their participation in the affair: "Q. And when you killed it, who was there? A. The two Ojeda boys and Harley was there. . . . Q. Who was it that helped hang it up (in the shed, for the purpose of skinning and dressing the carcass)? A. Arthur Ojeda and Manuel."

The circumstances above related were substantially corroborated by Elmer Harley. Both appellants denied they were present when the hog was shot. They denied that they helped to plan the killing of the hog or that they participated in the skinning or dressing of the carcass, or in a division of the meat.

Both Rudolph and Helen Maynard, children of the accomplice, Samuel Maynard, testified they saw the hog hauled in an automobile by their father and the two appellants from the corral to the shed and that they watched them skin and dress the animal. They also told of the subsequent cooking and eating of some of the pork by all of the parties implicated in the theft. This furnishes corroboration of the testimony of the accessory ample to support the verdict and judgment.

The jury was fully and properly instructed regarding the necessity of adducing substantial evidence to corroborate the testimony of an accessory so as to satisfactorily connect

the defendants with the commission of the crime of grand theft.

 It is asserted the necessary intent to steal the hog was not shown because Maynard was in search of a sheep and that he was too drunk to be responsible for his conduct and thought the hog which he proposed to kill was a sheep. It was not contended the appellants were drunk. The question of the sobriety of Maynard was a problem for the jury to determine. Evidently the appellants did not rely upon that defense at the trial, for no instructions were offered by them on the subject of drunkenness. The witness Maynard thought that he fully comprehended everything that transpired during the entire affair. He testified in that regard: "Q. As a matter of fact you don't know clearly what happened that night? A. I know the things I have told you. I know they happened. . . . Q. You were rather under the influence of liquor, weren't you? A. I had a few drinks, yes. Q. As a matter of fact, you were drunk weren't you? A. I wouldn't say that I was drunk."

Moreover, it is immaterial whether Maynard was drunk or sober at the time of the commission of the offense, except so far as his intoxication may have impaired his recollection of the facts and therefore affected the weight or credibility of his testimony at the trial. These were also matters for the determination of the jury. There is sufficient corroboration of the testimony that the appellants were present and helped to plan the theft and to kill the hog. If they aided and abetted in the killing of the hog with the intention of appropriating a part of its meat to themselves, then they were guilty of grand theft regardless of Maynard's condition of sobriety.

The appellants assign as reversible error the refusal of the court to give to the jury the following two instructions which were offered by them. These proffered instructions read as follows:

"II. The mere fact that the defendants ate some of the meat or, after having been given some of the meat, took it away with them is not sufficient to convict them of the crime charged. The people must prove beyond a reasonable doubt that the defendants, *and each of them,* took or carried away a hog, with the criminal intent to do the act, and there must be a joint union or operation of this act and intent.

The defendants cannot be found guilty of eating a portion of the hog, or carrying away a portion of the hog.''

"III. If, therefore you find that the defendants had no such joint union of act and intent to commit the crime charged, you will find them not guilty.''

■ The jury was informed that the defendants were charged with wilfully, unlawfully and feloniously stealing, taking and carrying away one sow, the property of George Scally. They were then clearly instructed that before the defendants could be convicted the jury must find that there existed "a union or joint operation of act and intent", of the accused persons in order to commit the crime. The last instruction above quoted which was refused by the court was adequately covered by the charge which was given.

■ The first instruction complained of may well have been remodeled and given under the theory of the appellants that they were not present when the hog was killed and did not participate in the grand theft, but merely accepted a portion of the meat after the crime was executed by Maynard. But it will be observed this instruction is erroneous and misleading. It charges the jury that the defendants may not be convicted unless it appears that "each of them" took away a (whole) hog. It is apparent the jury might get the impression from this language that it was necessary for each individual defendant to kill and separately carry away a whole hog to justify a conviction of grand theft. Or, in other words, that the taking and carrying away of less than a whole hog by any one defendant, regardless of his participation in the original plan to kill and appropriate the animal, does not constitute grand theft. This is not the law. The participation in the transaction with a felonious intent to kill the hog and wrongfully deprive the owner of the animal constitutes the crime of grand theft, even though the accused shares in only a small portion of the carcass or obtains no part of it at all.

The jury was fully instructed regarding the law governing principals and accessories to a crime, and of the necessity of finding that these appellants committed the act of "grand theft" with which they were charged, possessing the intention then and there to "wilfully, unlawfully and feloniously steal, take and carry away a sow, the property of George Scally". They were further instructed that: "An accom-

plice is one who is liable to prosecution for the identical offense charged against the defendants on trial in the cause in which the testimony of the accomplice is given.''

The jury must have understood that the crime of grand theft of an animal consists of the felonious taking from the owner of a live hog and not the mere eating of a portion thereof, or of the innocent sharing of the meat without any knowledge that it had been stolen by another person. As accomplices to the theft, the jury was told by inference that it was necessary to find that the Ojeda brothers were guilty of all the elements of the crime necessary to warrant a conviction of Maynard of the identical offense.

The record on appeal necessarily convinces the reader that the appellants knowingly participated in the plan to kill and appropriate the hog. The jury must have been satisfied of that fact. There appears to have been no miscarriage of justice in this case. Even though the rejected instruction last mentioned be deemed not to be fatally misleading still its omission is not reversible error. Under the circumstances of this case the judgment should be sustained under the provisions of section 4½ of article VI of the Constitution.

The judgment and the order are affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 14, 1933.