[Crim. No. 4699. In Bank. July 30, 1946.]

THE PEOPLE, Appellant, v. MORRIS TRIEBER, Respondent.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and James F. Brennan, Chief Trial Attorney, for Appellant.

J. W. Ehrlich and Joseph A. Brown for Respondent.

TRAYNOR, J.—The People appeal from an order dismissing an indictment against defendant by the Grand Jury of the City and County of San Francisco. The indictment charged in separate counts two violations of section 640 of the Penal Code, which provides: "Every person who, by means of any machine, instrument, or contrivance, or in any other manner, willfully and fraudulently, or clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument under the control of any telegraph or telephone company . . . is punishable as provided in section 639."*

The testimony before the grand jury reveals that defendant, with the assistance of Thomas Dixon, an employee of the Pacific Telephone Company, but without the knowledge or authorization of the company, secured two telephone extensions, each of which led to an apartment maintained by defendant. Defendant, also without the knowledge or authorization of the telephone company, had previously secured a number of additional extensions leading to these apartments. The extensions in both apartments were connected to telephones listed to other residents of the apartment buildings. In exchange for the consent of these residents to the installation and use of the extensions, defendant paid their telephone bills. Defendant used the extensions in his bookmaking establishment.

The two extensions that are the basis for the two counts in the indictment were installed by Thomas Dixon at night, work for which defendant paid him substantial fees. Defen-

---

*Section 639 provides that punishment shall be "by imprisonment in the state prison not exceeding five years, or by imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars, or by both such fine and imprisonment."

dant was arrested at one of his apartments. When an investigation was later made of the other apartment, the extensions had been forcibly removed.

Defendant, relying on *Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713], contends that the trial court had no jurisdiction to try him for the offenses charged on the ground that there was no evidence before the grand jury that the telephone lines involved were "under the control of any telegraph or telephone company" or that defendant made an "unauthorized connection" within the meaning of section 640. In the present case, however, evidence was presented to the grand jury that defendant committed the offenses charged.

There was ample evidence that the telephone facilities were "under the control" of the Pacific Telephone Company. There was testimony by the owner of the two apartment buildings in which defendant maintained his apartments that at defendant's request she had a telephone installed by the telephone company in a hall closet in one of the buildings, and that defendant paid the telephone bills for this station. Other witnesses testified that defendant paid the telephone bills issued by the telephone company to the subscribers to whose lines he made his connections. In addition, Herbert F. Schroeder, a supervisor and special agent for the Pacific Telephone Company, testified that it was his duty to investigate irregularities in wiring for this company and that in the performance of his duties he investigated the telephone lines allegedly tapped by defendant. Mr. Schroeder also testified that suspicion as to the wire tapping activities of Thomas Dixon was aroused by the irregular handling of an order to repair a tapped line that was received by the company, and that because of these activities the company discharged Mr. Dixon from its employ. Thomas Dixon testified that the telephone company had no knowledge of his wire tapping activities. Mr. Schroeder also described in detail the telephone equipment in defendant's apartments installed without company knowledge or authorization. His testimony revealed that he was instrumental in the investigation leading to and following defendant's arrest, and that he was present at the arrest.

Defendant bases his contention that the connections which were authorized by the subscribers, were not "unauthorized" within the meaning of section 640 on the ground

that since section 591 of the Penal Code* protects the telephone company against unauthorized connections, and since statutes should be construed so as to give a special meaning to each, section 640 should be read as simply protecting the subscriber's right to privacy and therefore as requiring only the subscriber's authorization. The subscriber, however, cannot, without the approval of the telephone company, authorize a connection to a telephone wire, for in so doing he would subject himself to imprisonment and fine under section 591. This section protects telegraph and telephone facilities from physical injury by prescribing punishment for one who "takes down, removes, injures or obstructs" such facilities. It also safeguards communication and power systems from theft of services or of electric current by prescribing punishment for one who "makes any unauthorized connection" with telephone, telegraph or "other electric" lines or facilities. A subscriber is therefore punishable under section 591 if he makes a connection to his telephone line without the approval of the operator of the line. (See *Davis* v. *Pacific Tel. & Tel. Co.,* 127 Cal. 312 [57 P. 764, 59 P. 698]; 24 Cal.Jur. 507.) A subscriber is also punishable thereunder if, instead of making the connection himself, he permits another to make it without the authority of the operator of the system, for by so enabling another to violate section 591 he becomes punishable himself under section 31 of the Penal Code as a principal to the crime. (See *People* v. *Nolan,* 144 Cal. 75, 79 [77 P. 774]; *People* v. *Ojeda,* 132 Cal.App. 593, 599 [23 P.2d 316].) Statutes are to be construed so as to harmonize with one another (*Southern Pacific Co.* v. *Railroad Com.,* 13 Cal.2d 89, 100 [87 P.2d 1055]; *People* v. *Pryal,* 25 Cal.App. 779, 780 [147 P. 114, 115].; see 23 Cal.Jur. 761), and it cannot be assumed that the Legislature refers in one section to an authorization that it declares punishable in another.

It does not follow, however, that because a subscriber alone cannot authorize a connection within the meaning of section 640 that the prohibition of that section is merely a

---

*"'Every person who unlawfully and maliciously takes down, removes, injures or obstructs or makes any unauthorized connection with any line of telegraph or telephone, or any other line used to conduct electricity, or any part thereof, or appurtenances or apparatus connected therewith, or severs any wire thereof, is punishable by imprisonment in the state prison not exceeding five years, or by a fine not exceeding five hundred dollars, or·imprisonment in the county jail not exceeding one year.''

superfluous repetition of the provision in section 591 that prohibits an unauthorized connection. The term "unauthorized" in section 640 must be read in the light not only of its context, but of the purpose of the section and the provisions surrounding it. Section 640, in addition to prohibiting wire tapping, forbids unauthorized interception of private messages. Section 639 forbids telegraph or telephone employees to use or appropriate information derived from a private message addressed to another person. Section 641 forbids bribing telephone or telegraph employees to disclose the contents of a private message. The object of these sections "is to prevent the employees of telegraph and telephone lines and offices from giving out to other than the addressee, or making a private use of, messages sent and received; and also to prevent persons not employees from getting possession of the contents of messages and information not intended for and not delivered to them; that is, by the means popularly known as 'wire tapping.'" (Kerr's Cyc. Codes of Cal., comment by editor on § 640, p. 739; see, also, *People* v. *Kynette,* 15 Cal.2d 731, 745 [104 P.2d 794].) In the light of this purpose, it is clear that a telephone company cannot authorize others to make a connection to a subscriber's individual station without his approval. It follows, therefore, that a connection to the station of an individual subscriber, such as was made by defendant, is an "unauthorized connection" under section 640 unless it was made with the authorization of the subscriber as well as the telephone company.

That the authorization of an individual subscriber alone, however, does not make a connection to his station lawful within the meaning of section 640 is clearly indicated by the provisions of that section. These provisions relate only to connections to company controlled facilities, a limitation that indicates that they refer to the authorization of the company controlling the network involved. Moreover, the provisions prohibit not merely unauthorized connections to wires leading to stations of individual subscribers, but the tapping of "any telegraph or telephone wire, line, cable, or instrument under the control of any telegraph or telephone company." The section thus applies to tapping whether it be of a main or local switchboard or other instrument of any variety, or whether it be of a main trunk or smaller line, wire, or cable. An individual subscriber ordinarily has no interest in or control of the use of any wire, line, cable or instrument that

transmits a number of messages from many sources at the same time. Furthermore, section 640 prohibits the tapping of any telegraph as well as of any telephone wire, line, cable, or instrument. There are ordinarily no "subscribers" using telegraph facilities controlled by a telegraph company that have lines leading to private stations to which they might attempt to authorize connections, and connections to telegraph apparatus also can be authorized only by a telegraph company. ■ A statute should be read and considered as a whole to determine the legislative intent. (*People* v. *Moroney*, 24 Cal.2d 638, 642 [150 P.2d 888]; see 23 Cal.Jur. 760.) ■ Since in all these instances only the telegraph or telephone company can authorize a connection, it cannot be doubted that the section requires company authorization when a line leading to the station of an individual subscriber is tapped.

Even if the line to which the connection is made should lead only to his station it would not be reasonable to allow the subscriber alone to authorize connections unknown to the company for the additional reason that he does not have exclusive use of this line. Other persons communicating over the line from an outside telephone are also within the protection of section 640, but they would not be protected if the subscriber alone could authorize a connection.

■ Section 640 serves the purpose of protecting the secrecy of telegraphic and telephonic messages, not by making any subscriber the sole judge as to when and whether a connection shall be made, but by strengthening with criminal sanctions the control of the telegraph and telephone companies over their entire networks, so that a company may more effectively supervise all connections.* It is of public concern

---

*Pursuant to Act 6386, section 14(b) (Public Utilities Act, Stats. 1915, p. 115, as amended; 2 Deering's Gen. Laws, Act 6386, p. 2475), and rules and regulations of the Railroad Commission thereunder (Utilities Gen. Order No. 96), the Pacific Telephone Company filed and received commission approval of Regulation No. 19 (Rev. Sheet C.R.C. No. 51362-T), dealing with "Ownership and Use of Instrumentalities on Subscribers' Premises":

"The Company shall own, furnish, and maintain all facilities, including instrumentalities, inside wiring, protective apparatus, and other equipment necessary to provide telephone service, except as may be otherwise specified in the rate schedules. All facilities provided shall conform to the established construction standards of the Company.

"All instrumentalities and equipment furnished by the Company in connection with a subscriber's service shall be carefully used and only

that communication systems controlled by public utilities be supervised in such a manner that all persons using such facilities may be assured that their communications cannot be intercepted by means of connections made without the knowledge and direction of the company.

The order is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied Aug. 26, 1946. Carter, J., and Schauer, J., voted for a rehearing.

duly authorized employees of the Company shall be allowed to connect, disconnect, move, change, or alter in any manner, any or all such instrumentalities and equipment.

"No apparatus or appliance not provided or authorized by the Company shall be attached to or used in connection with telephone equipment and facilities provided by the Company.

"The subscriber will be held responsible for loss of or damage to any equipment or apparatus furnished by the Company, unless such loss or damage is due to causes beyond his control."