TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | No. 85-601 |
| of | : | APRIL 11, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| JOHN T. MURPHY<br>Deputy Attorney General | : | |

_____


THE HONORABLE STEVE WHITE, Chief Assistant Attorney General, has requested an opinion on the following question:

May a California magistrate authorize the installation of a pen register by the issuance of a search warrant?

CONCLUSION

A California magistrate may authorize the installation of a pen register by the issuance of a search warrant.

ANALYSIS

A pen register has been described as follows (*United States* v. *Caplan* (E.D. Mich. S.D. 1966) 255 F.Supp. 805, 807):

1

"The pen register is a device attached to a given telephone line usually at a central telephone office. A pulsation of the dial on the line to which the pen register is attached records on a paper tape dashes equal in number to the number dialed. The paper tape then becomes a permanent and complete record of outgoing numbers called on the particular line. With reference to incoming calls, the pen register records only a dash for each ring of the telephone but does not identify the number from which the incoming call originated. The pen register cuts off after the number is dialed on outgoing calls and after the ringing is concluded on incoming calls without determining whether the call is completed or the receiver is answered. There is neither recording nor monitoring of the conversation."[1]

We are asked whether a California magistrate may authorize the installation of such a device by issuance of a search warrant. The warrant would direct law enforcement officers to search for and seize the numbers dialed from a telephone but not the conversations. We assume that the telephone subscriber, upon whose line the pen register will be connected, has no knowledge of and has not consented to such a connection. Moreover, we assume that the telephone company will make the connection or give the law enforcement officers access to its facilities or equipment.[2] The effect of the installation will be to provide law enforcement officers with a record of the calls originating from the subscriber's telephone.

I

TELEPHONE CONVERSATIONS

The Fourth Amendment of the United States Constitution provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported

---

[1] See also, *United States* v. *New York Telephone Co.* (1977) 434 U.S. 159, 161 fn. 1 and *People* v. *Blair* (1979) 25 Cal.3d 640, 654 fn. 11. More sophisticated devices will record the date and the time of the outgoing call, whether the call was answered and the duration of the call. (Comment, *On Privacy, Pen Registers, and State Constitutions*: *The Colorado Supreme Court Rejects Smith v. Maryland*, (1984) 15 U. of Toledo L.R. 1467.)

[2] Fees charged by and policies of telephone companies regarding pen registers are outside the scope of this opinion.

2

by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The language of article I, section 13, of the California Constitution is substantially identical.[3]

A discussion of electronic searches and seizures must include the United States Supreme Court cases on the subject of searching for and seizing telephone conversations: *Berger* v. *New York* (1967) 388 U.S. 41 and *Katz* v. *United States* (1967) 389 U.S. 347. In *Berger*, a state statute authorized an ex parte order for eavesdropping issued by a judge upon the oath or affirmation of certain law enforcement officers "'that there is reasonable ground to believe that evidence of a crime may be thus obtained, and particularly describing the person or persons whose communications, conversations or discussions are to be overheard or recorded and the purpose thereof, and, in the case of a telegraphic or telephonic communication, identifying the particular telephone number or telephone line involved.'" (388 U.S. at p. 43, fn. 1.) Armed with such an order, law enforcement officers placed "recording devices" on certain telephones and recordings of conversations thus obtained were played to the jury which convicted the defendant. The Supreme Court reversed the conviction. The court, finding the state statute too intrusive of Fourth Amendment protections, laid down guidelines by which an electronic search and seizure of conversations might be conducted: probable cause to believe that a specific crime has been or is being committed; a warrant describing with particularity the type of conversations sought; a warrant authorizing only a limited intrusion and not a series of intrusions; a promptly executed warrant; an invasion of privacy no greater than

---

[3] Article I, section 28, subdivision (d), of the California Constitution (Proposition 8 on the June 1982

primary election ballot) eliminated any judicially created independent state grounds for the exclusion of evidence obtained by search and seizure. In *In re Lance W.* (1985) 37 Cal.3d 873, 886, the court interpreted this provision as having no effect on the substantive right to security from unreasonable searches and seizures contained in the California Constitution. The court stated at pages 886-887:

"What would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, and this is so even if it would pass muster under the federal Constitution. What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled."

Consequently, the absence of a search warrant will not preclude the admission of evidence if the search and seizure was valid under federal law. (*People* v. *Lissauer* (1985) 169 Cal.App.3d 413, 419.)

3

necessary under the circumstances; no indiscriminate seizure of conversations of persons having no connection to the crime under investigation; a termination date for the search and immediate termination upon seizure of the conversations sought; special facts or exigent circumstances; a return of warrant with judicial supervision over the use of the seized conversations. (388 U.S. at pp. 57-60.)

In *Katz*, federal officers did not "tap" a telephone but attached an electronic listening device to the outside of a telephone booth and intercepted conversations of a suspected bookmaker. The officers did not have a search warrant. The Supreme Court found the absence of the warrant fatal to the conviction which followed the eavesdropping. The court observed (389 U.S. at p. 354):

"[I]t is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate safeguards, the very limited search and seizure that the Government asserts in fact took place."

*Berger* and *Katz*, then, would permit electronic searches for and seizures of telephone conversations through a precise and discriminate judicial search warrant complying with the United States Constitution.

The requirements of the *Berger* and *Katz* cases have been incorporated into the eavesdropping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. (18 U.S.C. §§ 2510-2520.) These provisions, inter alia, enable a state to legislatively authorize electronic interception of certain wire or oral communications (18 U.S.C. § 2516(2)):

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in

4

narcotic drugs, marijuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses."

The federal law provides definitions of the statutory terms (18 U.S.C. § 2510) including:

"(1) 'wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;

"(2) 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation;

". . . . . . . . . . . . . . . . . . . . .

"(4) 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

". . . . . . . . . . . . . . . . . . . . .

"(8) 'contents', when used with respect to any wire or oral communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport, or meaning of that communication; . . . ."

California has not enacted a statute implementing this federal law. Consequently, in California there is no procedure which would permit the interception of confidential telephone conversations.[4]

---

[4] When the telephone conversation is not confidential, i.e., a party thereto consents to the overhearing of the conversation, the eavesdropping by law enforcement is considered lawful. (See Pen. Code, 633; *Hoffa* v. *United States* (1966) 385 U.S. 293, 302; *People* v. *Mabry* (1969) 71 Cal.2d 430, 440-442, cert. den. (1972) 406 U.S. 972.)

## II

## TELEPHONE NUMBERS

We turn to the use of pen registers in the context of electronic searches and seizures. In *Smith* v. *Maryland* (1979) 442 U.S. 735, the telephone company, at police request, installed a pen register to record the numbers dialed from a telephone at the home of a person suspected of making threatening and obscene calls. The police had no search warrant or other court order. The Supreme Court held that the use of a pen register was not a search within the meaning of the Fourth Amendment and, hence, "no warrant was required." (442 U.S. at p. 746.) The court reasoned that the caller had no actual or legitimate expectation of privacy in the phone numbers he dialed. (442 U.S. at pp. 741-746.)

The Omnibus Crime Control and Safe Streets Act of 1968, in its wiretapping provisions (18 U.S.C. §§ 2510-2520), has been interpreted as applicable only to the interception of the contents of communications and as not governing pen registers. (*United States* v. *New York Telephone Co.*, *supra*, 434 U.S. 159, 166-167; *United States* v. *Illinois Bell Tel. Co.* (7th Cir. 1976) 531 F.2d 809, 812; *Sistok* v. *Northwestern Tel. Systems, Inc.* (Mont. 1980) 615 P.2d 176, 181.)

Some state courts have held under their state constitutions and laws that search warrants are not required for the installation of pen registers. (See *People* v. *Guerra* (1982) 455 N.Y. Supp.2d 713, 714-715; *State* ex rel. *Ohio Bell Tel. Co.* v. *Williams* (Ohio 1980) 407 N.E.2d 2, 3-5.) On the other hand, another state court has interpreted its state constitutional provision, which is substantially similar to the Fourth Amendment and article I, section 13, of the California Constitution, as generally prohibiting the use of a pen register without a search warrant. (*People* v. *Sporleder* (Colo. 1983) 666 P.2d 135, 143-144.)

The California courts have not addressed the pen register issue in a similar constitutional context. However, in analogous situations, they have found that a telephone subscriber has a reasonable expectation of privacy in his or her telephone records. (*People* v. *Chapman* (1984) 36 Cal.3d 98, 106-111 (unlisted telephone number); *People* v. *Blair*, *supra*, 25 Cal.3d 640, 653-655 (hotel guest's telephone records); *People* v. *McKunes* (1975) 51 Cal.App.3d 487, 492 (telephone company's customer's records).) We believe that a subscriber's expectation of privacy in the record of dialed numbers maintained by the telephone company or by a hotel is substantially similar to his or her privacy interest in the dialed numbers revealed by a pen register. In view of these precedents, California courts are likely to find that a telephone subscriber's expectation that the numbers dialed from his or her telephone will remain free from governmental

intrusion by a pen register is a reasonable expectation of privacy protected by the California Constitution.

III

SEARCH WARRANTS

A significant consideration in the *Chapman*, *Blair* and *McKunes* cases was that the police officers, in obtaining the telephone records, were "[a]cting without a warrant" (*Chapman*, *supra*, at pp. 103-104), "without legal process" (*Blair*, *supra*, at p. 653) and "without subpoena or other court order" (*McKunes*, *supra*, at p. 490). Implicit in these cases is the admonition that the searches for and seizures of telephone records were illegal because an appropriate judicial order had not been secured. (See *Carlson* v. *Superior Court* (1976) 58 Cal.App.3d 13, 20-23.) Indeed, the thrust of the exclusionary rule and of the cases applying it is to encourage the use of search warrants by law enforcement officials. (*People* v. *Cahan* (1955) 44 Cal.2d 434, 448.)

The Fourth Amendment indicates that a warrant may be issued for the seizure of "things." Such language as interpreted in Fourth Amendment cases permits the seizure of evidence of a crime. As the Supreme Court explained in *Warden* v. *Hayden* (1966) 387 U.S. 294, 306-307 when discarding the "mere evidence" rule (fn. omitted):

"The premise in *Gouled* [(1921) 255 U.S. 298] that government may not seize evidence simply for the purpose of proving crime has likewise been discredited. The requirement that the Government assert in addition some property interest [instrumentalities of crime, fruits of crime or contraband] in material it seizes has long been a fiction, obscuring the reality that government has an interest in solving crime. *Schmerber* [(1966) 384 U.S. 757] settled the proposition that it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband."

The things to be searched for and seized may be tangible or intangible. (*Id.*, at p. 305; *Osborn* v. *United States* (1966) 385 U.S. 323, 329-331.)

Rule 41(b) of the Federal Rules of Criminal Procedure provides, in part, that a warrant may issue to search for and seize any "property that constitutes evidence of the commission of a criminal offense. . . ." Interpreting this language in *Michigan Bell*

7

*Tel. Co.* v. *United States* (6th Cir. 1977) 565 F.2d 385, 389, the court in a pen register case stated:

> "Fed.R.Crim.P. 41 authorizes the issuance of search warrants for 'property' that constitutes evidence of a crime. The term 'property' is used in the rule to 'include documents, books, papers and any other tangible objects.' Fed.R.Crim.P. 41(h). We do not construe the definition to be all inclusive. Common sense dictates that, as technology makes possible the seizure of intangibles, the courts should not limit the scope of Rule 41, but rather we should interpret the rule so as to effectuate its purpose. In *Katz* v. *United States*, 389 U.S. 347, 355-56, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and in *Osborn* v. *United States*, 385 U.S. 323, 329-30, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), the Supreme Court held that valid federal warrants could be issued to search for and seize intangible objects, that is, oral communications. We conclude that the impulses recorded by the telephone equipment in the present case fall within the scope of Rule 41 and *Katz* and *Osborn*."

Consequently, under federal constitutional and statutory law an intangible thing may be seized through a search warrant.

Like the Fourth Amendment, the California Constitution proscribes unreasonable searches and provides that "a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." (Cal. Const., art. I, § 13.) California's general search warrant statute, Penal Code section 1524, is consistent with federal law in allowing the search for and seizure of things that are evidence, providing in part:

> "(a) A search warrant may be issued upon any of the following grounds:
>
> "(1) When the property was stolen or embezzled.
>
> "(2) When the property or things were used as the means of committing a felony.
>
> "(3) When the property or things are in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing its being discovered.

8

"(4) *When the property or things to be seized consist of any item or constitutes any evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony.*

"(5) When the property or things to be seized consist of evidence which tends to show that sexual exploitation of a child, in violation of Section 311.3, has occurred or is occurring.

"(b) The property or things described in subdivision (a) may be taken on the warrant from any place, or from any person in whose possession it may be." (Emphasis added.)

A number dialed from a telephone may constitute evidence which tends to show commission of a felony or that a particular person committed a felony.

Prior to 1957, the section 1524 set down the grounds for issuance of a search warrant to include situations when (1) "the property was stolen or embezzled," when (2) "it was used as a means of committing a felony," and when (3) "it is in the possession of any person with the intent to use it as the means of committing a public offense . . . ." (Amend. Stats. 1899, ch. 72, § 1.) In 1957, section 1524 was amended (Stats. 1957, ch. 1884, § 1) to insert, inter alia, the word "things" in several places and to add a subdivision (4):

"A search warrant may be issued upon any of the following grounds:

"1. When the property was stolen or embezzled.

"2. When the property *or things* were used as the means of committing a felony.

"3. When the property *or things* are in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered.

"4. *When the property or things to be seized consist of any item or constitutes any evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony.*

9

"The property *or things* described in this section may be taken on the warrant from any place, or from any person in whose possession it may be." (Emphasis added.)

As we have seen, these 1957 changes remain in the present form of the statute.

The changes had their origin in Senate Bill No. 237 (1957 Regular Session). This bill was sponsored by the California District Attorneys' Association, which explained the purpose of the bill (Fourth Progress Report to the Legislature, Senate Interim Judiciary Committee (1955-1957), pp. 390-391):

"Senate Bill 237 contains proposed changes in Section 1524 of the Penal Code, which relate to grounds for issuing a search warrant. The proposed changes made therein are meant to remove redundant material and *to broaden the grounds upon which a search warrant may be issued*. The heart of the change in this section appears on page 2 of said bill, commencing with line 9 and ending with line 12, which reads as follows:

"'When the property or things to be seized consist of any item or constitutes any evidence which tends to show a public offense has been committed, or tends to show that a particular person has committed or intends to commit a public offense.'

"This change, based on Chapter 263.02 of the Wisconsin Statutes and in accordance with the Uniform Law of Arrest, provides for the issuance of a search warrant on reasonable and probable cause to recover *any evidence* which tends to show that a public offense has been committed.

"Section 1524 of the Penal Code has not been changed in any material aspect since 1872, the date of the enactment of the Penal Code. A search warrant cannot be issued, under the present law, but upon probable cause, supported by an affidavit naming or describing the person, and particularly describing the property in the place to be searched. Regardless of the degree of probable cause, it is presently impossible under our existing law to obtain a search warrant for the recovery of any of the following items: fibres, hair, fingerprints, a dead body, business records, etc. Each and every one of the foregoing items could be of vital importance in the solving of a serious crime." (Emphasis added.)

10

The opinion of Legislative Counsel, issued April 18, 1957, describes the changes as follows (*id.*, at p. 415):

"This bill does not appear to us to constitute a codification of case law. The major change effected in the language of the section by the bill is the addition of language permitting the issuance of a warrant when the property or things to be seized consist of *any item* or constitutes *any evidence* which tends to show a public offense has been committed, or tends to show that a particular person has committed or intends to commit a public offense.

"To the extent that case law sheds light on this matter it is indicated that the courts have not enlarged the classes of property described by Section 1524 for which a warrant may be issued (see *Stern* v. *Superior Court*, 76 Cal.App.2d 772)." (Emphasis added.)

The Legislative Digest which accompanied the enactment of the 1957 amendments states (Legislative Digest, 1957 Regular Session, p. 33):

"Modifies provisions relating to grounds on which such warrant may be issued by referring in some cases to 'things' as well as 'property' proposed to be seized, by referring to property or things used as means of committing a public offense, rather than just felony, . . . and by providing that the warrant may be issued when the property or things consist of *any item* or constitute *any evidence* which tends to show a public offense has been committed or that a particular person has committed or intends to commit a public offense.

"*Eliminates provisions*, *relating to specific types of property*, governing the place or person from whom the property may be taken, and provides, generally, that the property, or things, may be taken from any place or from any person having possession." (Emphasis added.)

This history demonstrates that the Legislature in 1957 was making the type of change in search warrant procedure that the United States Supreme Court would subsequently make in *Warden* v. *Hayden*, *supra*. Indeed, section 1524, subdivision 4, has been characterized as rejection of the rule that "mere evidence" could not be seized though a search warrant. (*People* v. *Thayer* (1965) 63 Cal.2d 635, 638-642, cert. den. 384 U.S. 908.) The amendments permitted the seizure of evidence of crime, as well as property taken or used in crime. Particularly, by adding the word "things" to the word

11

"property" the Legislature was expanding upon what could be searched for and seized and eliminating the provisions relating to specific types of property.

A "thing" is an inanimate object as contra- distinguished from a person. (*Gayer* v. *Whelan* (1943) 59 Cal.App.2d 255, 261.) A thing may be corporeal or incorporeal, tangible or intangible. (See *United States* v. *Somers* (S.D. Cal. S.D. 1908) 164 F. 259, 261-262.) "Probably there is no word in the English language so elastic and elusive as the word 'thing.'" (Allen, *Things*, (1940) 28 Cal.Law.R. 421.) Are the numbers dialed from a telephone and recorded by a pen register "things" within the meaning of section 1524?

The electrical impulses from a telephone are, like conversations coming through the telephone, things which may be seized. The California cases have assumed that conversations are things which may be seized. In *People* v. *Drieslein* (1985) 170 Cal.App.3d 591 the police were executing a search warrant in defendant's apartment and intercepted a drug-related telephone call. On appeal the defendant claimed that the seizure of the telephone call was a warrantless seizure unrelated to the search being conducted. The court first stated the applicable law at page 600:

"Since an interception of telephone calls was not delineated in the search warrant the officers were executing at the time the telephone call was intercepted, it was the People's burden to justify that interception as a warrantless seizure. [Citation.]."

The court then found that the People had sustained a part of this burden, finding at page 602:

"The record in the case at bench contains facts which could objectively justify the officer's interception of the telephone call, e.g., the affidavit of Officer Zabokartsky supporting the issuance of the search warrant which indicates defendant used his telephone in drug transactions and the large amount of drugs and cash found in the premises."

In *People* v. *Coyle* (1969) 2 Cal.App.3d 60 the defendant's wife telephoned him and, with her permission, the police tape recorded the conversation. On appeal from his plea of guilty an issue arose as to whether the lawfulness of the recording was reviewable under Penal Code section 1538.5. The court stated at page 63:

"The application of that section [1538.5] to the case at bench depends upon a determination that (a) the tape recording was a "tangible or

12

intangible thing," and (b) that the act of recording the conversation was a "search or seizure."

The court found, on page 64:

> "In *People* v. *Superior Court* (1969) 70 Cal.2d 123 [74 Cal.Rptr. 294, 449 P.2d 230] the Supreme Court had to decide whether a motion could be made under section 1538.5 to suppress a tape recording which had been made by a private citizen. The court concluded that the motion was not available because the section only applied to a search or seizure made by a government agent. There is no suggestion in that opinion either that the recording was not a "thing," or that the act of recording a conversation did not constitute a search within the meaning of the statute.

> "In *Katz* v. *United States* (1967) 389 U.S. 347, 353 [19 L.Ed.2d 576, 583, 88 S.Ct. 507], it was held that the act of a government agent in electronically listening to and recording a telephone conversation constituted a "search and seizure" within the meaning of the Fourth Amendment to the United States Constitution. Upon this authority, we conclude that the recording here sought to be suppressed was a "thing obtained as a result of a search or seizure" within the meaning of section 1538.5, subdivision (a). It follows that defendant was entitled to invoke that section, and to seek appellate review of the adverse ruling despite his plea of guilty."

In these cases the things seized were the conversations. The tape recordings were the form in which these conversations were preserved. Similarly, the telephone dialing impulses, when evidence of a crime within the meaning of subdivision (4) of Penal Code section 1524, are things which may be seized; a pen register may be used to accomplish that seizure as a tape recorder is used to capture a conversation or a camera is used to take an image.

A future thing, such as the anticipated dialing of a number from a telephone, may be the subject of a search warrant. In *Alvidres* v. *Superior Court* (1970) 12 Cal.App.3d 575, 577, the court faced this question:

> "[I]f the magistrate is presented with an affidavit which satisfies him that all the requisites for a valid search will ripen at a specified future time or upon the occurrence of a specified event must he wait until that time or event before authorizing the search and seizure or may he issue his warrant

13

to be executed at the future specified time or upon the occurrence of the future event[?]"

The court stated at page 581:

"We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future. Nowhere in either the federal or state Constitutions, nor in the statutes of California, is there any language which would appear to prohibit the issuance of a warrant to search at a future time."

The court then added at pages 581-582:

"We find support for our holding in *Katz* v. *United States*, 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], and in *Berger* v. *New York*, 388 U.S. 41 [18 L.Ed.2d 1040, 87 S.Ct. 1873], where our Supreme Court indicated that it was constitutionally possible to obtain a search warrant for the seizure of oral communications through the use of electronic surveillance.

"In *Katz*, the court said at page 354 [19 L.Ed.2d at p. 584]: '. . . it is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it [the electronic surveillance] *was to proceed,* and clearly apprised of the precise intrusion it would entail, *could constitutionally have authorized . . . the . . . search and seizure. . . .*' (Italics added.)

"The acknowledgment of such a possibility clearly envisions a warrant that by the very nature of things would have to be issued in advance of the time that the subject matter to be seized was present on the premises. A warrant directing the seizing of a conversation could only be directed to words which would not be in existence until vocalized by the participants thereto."

Other cases similarly hold. (*People* v. *Hernandez* (1974) 43 Cal.App.3d 581, 589 fn. 2; *People* v. *Shapiro* (1974) 37 Cal.App.3d 1038, 1042-1043.)

Did the Legislature when amending section 1524 in 1957 intend to exclude certain things, such as evidence obtained by electronic means, from the scope of the

14

search warrant procedure?  We find in the history and context of the law no suggestion of such an intent.

The law in 1957 was not silent on electronic searches and seizures.  (See Fricke, *California Criminal Evidence*, Fourth Edition, 1957, pp. 451-454.)  Penal Code section 653h (repealed Stats. 1967, ch. 1509, § 7) then provided that it was unlawful for any person, without the consent of the owner, lessee or occupant of the property, to install a "dictograph." An exception, however, was made for such devices when used and installed by "a regular salaried peace officer expressly authorized . . . by the head of his office or department or by a district attorney, when such use and installation are necessary in the performance of their duties in detecting crime and in the apprehension of criminals."  Nevertheless, the effectiveness of the exception had been circumscribed two years earlier in *People* v. *Cahan*, *supra*, 44 Cal.2d 434, which held that law enforcement officers could not constitutionally gain entry without a search warrant to private premises for purposes of secreting listening devices.  The court stated (44 Cal.2d at p. 437):

"Section 653h of the Penal Code does not and could not authorize violations of the Constitution . . . ."

The court declared the conduct of the officers, acting within the exception of the section 653h, to be unlawful and excluded the evidence obtained from the listening devices. (See also *Irvine* v. *California* (1954) 347 U.S. 128, 132; *People* v. *Tarantino* (1955) 45 Cal.2d 590, 595.)

*Cahan* involved police officers entering the defendants' houses and installing listening devices or "bugs" to overhear conversations.  A pen register requires no illegal entry and does not overhear conversations.

Other California laws in 1957 addressed "taps," i.e., connecting into wires to hear conversations.  Penal Code section 640 (repealed Stats. 1967, ch. 1509, § 6) made it unlawful to "wilfully and fraudulently, or clandestinely" tap or to make any unauthorized connection with any telegraph or telephone wire, line, cable or instrument.  Section 640 was interpreted to require that both the permission of the telephone subscriber and of the telephone company be obtained before a third party could tap into or connect with a telephone line.  (*People* v. *Trieber* (1946) 28 Cal.2d 657, 662.)  However, former Penal Code section 640 was construed by the courts only in situations involving eavesdropping.

On the federal level the United States Supreme Court in *Olmstead* v. *United States* (1928) 277 U.S. 438, 457-466, had held that it was not unconstitutional for federal officers to wiretap if such could be accomplished without a physical trespass.  However,

15

Congress in 1934 enacted section 605 of the Federal Communications Act to prohibit such practice when the person sending the wire communication did not consent thereto. In a series of cases which construed this enactment, federal and state officers, as well as private persons, were prohibited from wiretapping and any evidence obtained was excludable in federal courts. (*Nardone* v. *United States* (1937) 302 U.S. 379, 382; *Schwartz* v. *Texas* (1952) 344 U.S. 199, 203.) The prohibition was held applicable to both intrastate and interstate telephone conversations. (*Weiss* v. *United States* (1939) 308 U.S. 321, 329.) However, section 605 of the Federal Communications Act, like its California counterparts, had been by 1957 only applied in cases where conversations were divulged. It was not until 1966 that a federal court found that a pen register was included within the scope of section 605. (*United States* v. *Dote* (7th Cir. 1966) 371 F.2d 176, 181.) Nevertheless, in 1968, with the enactment of the Omnibus Crime Control and Safe Streets Act Congress deleted any reference to wire communications from section 605. The 1968 wiretap statute, as we have seen, does not govern pen registers. (*United States* v. *New York Telephone Co.*, *supra*, 434 U.S. 159, 168 fn. 13.) Moreover, the trespass test of *Olmstead*, *supra*, was abandoned in 1967. (*Katz* v. *United States*, *supra*, 389 U.S. 347, 351-353.)

We find nothing in the state and federal law in 1957 which would have prohibited the use of a pen register. *Cahan* involved an illegal entry and the installation of devices to overhear conversations; *Olmstead* permitted the recording of conversations without a physical trespass; neither former Penal Code sections 653h or 640 nor former section 605 of the Federal Communications Act had been interpreted to prohibit the seizure of electrical signals dialed from a telephone. We have no reason to suspect that the Legislature, when amending section 1524 in 1957, was excluding telephone number evidence from the search warrant procedure.

Penal Code section 1524, as amended in 1957, eliminates artificial barriers to the types of things which might be seized. However, it is not a statute which enables the police to eavesdrop on confidential telephone conversations since it does not have the procedural safeguards now required by the Omnibus Crime Control and Safe Streets Act. In contrast, where the purpose of the police is to obtain a telephone record, in the form of electrical dialing impulses from a telephone, the search warrant process of 1524 is an available vehicle to do so. We see no material difference between securing a search warrant to get telephone numbers from the telephone company or a hotel, and obtaining a search warrant to get telephone numbers directly from the telephone itself.

We find nothing in the California search warrant statute which would preclude a magistrate from using that process to allow, on probable cause demonstrated, a search for telephone numbers by means of a pen register and the seizure of those numbers in a form resulting from the operation of such device.

IV

OTHER STATUTES

In enacting the "Invasion of Privacy Act" in 1967 (see Pen. Code, §§ 630-637.5) the Legislature made the following finding in Penal Code section 630:

"The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of law breakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter [Jan. 1, 1968]." (See also Pen. Code, §§ 633 and 633.5.)

Assuming that a pen register is a "listening device and technique", nothing in the law which predated the Invasion of Privacy Act restrained law enforcement agencies from using a pen register authorized by a search warrant. In any event, existing law does not prohibit similar use.

Penal Code section 631 is not an obstacle to use of the search warrant process. That section (derived from former section 640, *supra*) provides, in part, as follows:

"(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, *intentionally taps*, or makes any *unauthorized connection*, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable or instrument, . . . is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison . . . ." (Emphasis added.)

In *People* v. *Suite* (1980) 101 Cal.App.3d 680, the court held that use of a "trap" (a technique which records incoming telephone numbers), even without a warrant,[5] was not an "unauthorized connection." The court said at pages 685-686:

---

[5] The device was installed on the police agency's own line to record incoming numbers. Trapping or tracing a telephone call ordinarily involves the consent of one party to the call. (See *Application of the United States of America, Etc.* (3rd Cir. 1979) 610 F.2d 1148, 1152-1153.)

17

"The term 'unauthorized connection' is undefined by statute. In early cases involving former section 640, the antecedent of section 631, identical language prohibiting an 'unauthorized connection' to a telephone line was construed to prohibit a subscriber to telephone service from connecting his own equipment (i.e., an extension line) to his phone line without permission of the telephone company. The consent of both the subscriber and the phone company was required for such a connection to be 'authorized.' (See, e.g., *People* v. *Trieber* (1946) 28 Cal.2d 657, 662-663 [171 P.2d 1]; see also Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal. L.Rev. 1182, 1202.) However, trapping is not analogous to this form of 'unauthorized connection,' which in effect was an attempt to utilize the company's line without payment.

". . . . . . . . . . . . . . . . . . . . . .

"Trapping of the police emergency lines here neither intercepted nor revealed the content of any communication, but instead only disclosed the telephone numbers of the callers."

The court concluded that the Legislature's concern in enacting section 631 was to "prevent secretly listening to the *contents* of private conversations, or eavesdropping" and that "[t]rapping is not eavesdropping." (101 Cal.App.3d at p. 687; emphasis in original.) Likewise, a pen register does not eavesdrop on conversations; also it is not a device to utilize the telephone company's line without payment.

The California Supreme Court recently stated in *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 359:

"Section 631 was aimed at one aspect of the privacy problem — eavesdropping, or the secret monitoring of conversations by third parties."

For similar reasons we do not believe that Penal Code section 632 would preclude the use of a pen register. Section 632 provides, in part, as follows:

"(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by a fine not exceeding

18

two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. . . .

"(b) The term 'person' includes an individual, business association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication."

This section prohibits eavesdropping on or the recording of a confidential communication. (*Rogers* v. *Ulrich*, (1975) 52 Cal.App.3d 894-899.) Since eavesdropping is listening secretly to what is said in private, it has no application to a pen register situation. (*Id.*, at pp. 898-899.) Nor does the use of a pen register constitute the recording of a confidential communication.

Penal Code section 632, subdivision (c), provides:

"(c) The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

A pen register has been held not to be a means of acquiring a communication.

"Pen registers do not 'intercept' because they do not acquire the 'contents' of communications, as that term is defined by 18 U.S.C. § 2510(8). Indeed, a law enforcement official could not even determine from the use of a pen register whether a communication existed. These devices do not hear sound. They disclose only the telephone numbers that have been dialed -- a means of establishing communication. Neither the purport of any communication between the caller and the recipient of the call, their identities, nor whether the call was even completed is disclosed by pen registers." (*United States* v. *New York Telephone Co.*, *supra*, 434 U.S. 159, 166-167.)

19

We recognize that a telephone subscriber has a privacy interest in the numbers he or she dials from a telephone.  This privacy interest is protected by requiring law enforcement officers to obtain a search warrant.  We do not believe that the installation of a pen register through a search warrant is a "tap" or "unauthorized connection" forbidden by section 631 or that monitoring the dialing of a telephone number is eavesdropping upon or recording a "confidential communication" prohibited by section 632. Since telephone numbers may be seized by a search warrant or other process when reduced to a record in the telephone company's office (*Chapman* and *McKunes*, *supra*) or in a hotel's office (*Blair*, *supra*) we see no legislative intent to cut off access by a search warrant to the same thing when produced by a pen register.  Indeed, the telephone company's and the hotel's records were also electronically generated from dialing impulses.

We conclude that a California magistrate may authorize the installation of a pen register by issuance of a search warrant.[6]

*****

---

[6] To the extent that our Index Letter No. 78-103, July 13, 1978, and our Unpublished Opinion No. 80-118, April 24, 1980, are inconsistent with the instant opinion, they are disapproved. *People* v. *Suite*, *supra*, has convinced us that our interpretation of the term "unauthorized connection" in section 631 contained in our prior unpublished opinions was erroneous.